**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OHIO**

| | |
|---|---|
| **Ramon Bryant,** | **Case No. 1:25CV1551** |
| **Plaintiff,** | |
| **-vs-** | **JUDGE PAMELA A. BARKER** |
| **Annette Chambers-Smith, et al.,** | |
| **Defendants.** | **MEMORANDUM OPINION & ORDER** |

Currently pending is the Motion of Defendants Annette Chambers-Smith, Christopher Lambert, Dana Blankenship, and Daniel Akers to dismiss Plaintiff Ramon Bryant's Complaint. (Doc. No. 11-1.) Plaintiff filed a *pro se* Brief in Opposition on February 27, 2026, to which Defendants replied on March 13, 2026. (Doc. Nos. 14, 15.) For the following reasons, Defendants' Motion to Dismiss is GRANTED IN PART and DENIED IN PART, as set forth herein.

## I. Factual Allegations

The *pro se* Complaint contains the following factual allegations. Plaintiff Ramon Bryant ("Plaintiff" or "Bryant") is an inmate at Mansfield Correctional Institution (hereinafter "Mansfield Correctional"). (Doc. No. 1 at PageID#s 4-5.) Mansfield Correctional is an Ohio state prison that is under the control of the Ohio Department of Rehabilitation and Corrections ("O.D.R.C."). (*Id*. at PageID# 5.) At all times relevant herein, Defendant Annette Chambers-Smith ("Chambers-Smith") was the Director of the O.D.R.C.; Defendant Christopher Lambert ("Lambert") was the Chief Grievance Inspector for the O.D.R.C.; Defendant Dana Blankenship ("Blankenship") was the Grievance Inspector for Mansfield Correctional; and Defendant Daniel Akers ("Akers") was employed as a prison guard at Mansfield Correctional. (*Id*.)

Throughout and during 2023, Bryant was housed in Unit 4A of Mansfield Correctional. (*Id.*) Prior to July 2023, Bryant "filed numerous grievances against a corrupt 4A female guard who was harassing him and making threats to arrange to have inmates assault him." (*Id.*) Defendants Blankenship and Lambert denied all of Bryant's grievances and appeals and "threatened to ban him from being allowed to file any more grievances." (*Id.*) In June and July 2023, Bryant "wrote and sent several complaints/letters to [Defendant] Chambers-Smith (and the Warden) detailing the aforesaid retaliation threats and violence threats to arrange [to] have him assaulted."[1] (*Id.* at PageID#s 5-6.) According to Bryant, Defendant Chambers-Smith and the Warden "intentionally ignored and disregarded all of [his] letters and complaints" and "never answered." (*Id.* at PageID# 6.)

Bryant alleges that he was assaulted by another inmate on July 13, 2023. (*Id.*) Specifically, Bryant alleges as follows:

> 12. On or about July 13, 2023, Bryant went to evening dinner in the [Mansfield Correctional] South Chow Hall during 5:45 – 6 p.m. He was standing in a line among 50 other 4A inmates with several guards very close by. Without notice and no provocation an unknown black inmate began punching Bryant in his head. A nearby guard grabbed the assailant and cuffed him and took him out straight back to his cell in Unit 4A. Bryant broke away from the assault and ran back to his cell and locked himself in. Defendant Lt. Akers was the shift supervisor in charge and on the scene. A second inmate was identified and cuffed.
>
> 13. On orders by Akers both attackers were not taken to T.P.U. segregation (known as "The Hole"). On orders by Akers no conduct tickets were issued on the assailants and they simply returned to their cells in Unit 4A without any imposed punishment.

[1] Bryant attaches an Affidavit to his Complaint in which he likewise avers that he filed "informal complaints and grievances against 4A female guard [Corrections Officer] Ms. 'Strait' for constant harassment." (Doc. No. 1 at PageID# 9.)

(*Id*.) Bryant also recounts the above assault in an Affidavit attached as an Exhibit to his Complaint. (*Id*. at PageID# 9.) Therein, he avers that he "was told that [Corrections Officer] Ms. Strait 'paid' gang inmates to arrange, set up, and conduct the assault done to [him] because [his] filing grievances against her interfered with her 'business' of providing drugs to inmates." (*Id*. at PageID# 9.)

Bryant suffered "numerous injuries to his head and face and likely concussions due to loss of balance, distorted vision and severe long term headaches." (*Id*. at PageID# 6.) Bryant alleges that he was not taken to the infirmary and was "never seen, never treated, and never examined by any licensed doctor, nurse nor medical staff." (*Id*. at PageID#s 6, 9.)

Bryant alleges that "[p]ursuant to 'policy' and Orders by Akers, Blankenship, Lambert and Chambers-Smith no criminal assault report was ever made to any law enforcement agency." (*Id*. at PageID# 6.) Defendants "ordered all camera videos and body camera videos destroyed and erased" and also "ordered the records and reports falsified and the majority erased." (*Id*.) Bryant's grievances regarding the assault were denied and rejected by Defendants Blankenship and Lambert. (*Id*.) Bryant wrote and sent "complaint letters" regarding the "assault and misconduct" to Defendant Chambers-Smith but his letters were ignored. (*Id*.)

According to Bryant, "it is Defendants[‘] proven well established 'policy' to retaliate [against] inmates and severely punish them for filing" grievances and to "permit guards to retaliate and approve it including use of violence and assaults and more." (*Id*. at PageID# 7.) Bryant further alleges that it is Defendants' "well established" and "routine" 'policy' to (1) "permit and condone felony assaults (including stabbings) by inmates (and [Mansfield Correctional] guards and staff);" and (2) "destroy, conceal, [and] erase evidence, videos and records of assaults and felony crimes and falsify reports of them and mislabel assaults as 'fights.'" (*Id*.) Lastly, Bryant alleges that "all acts herein by all

defendants were committed knowingly, intentionally with deliberate indifference to [his] safety and constitutional rights [under] the First and Eighth Amendments." (*Id.*)

## II. Procedural History

Bryant filed a *pro se* Complaint in this Court against Defendants Chambers-Smith, Blankenship, Akers, and Lambert. (Doc. No. 1.) The Complaint is signed and dated July 13, 2025 (*id.* at PageID# 8) but was not docketed until July 25, 2025. Therein, Bryant asserts claims against Defendants pursuant to 42 U.S.C. § 1983 for violations of his rights under the First and Eighth Amendments to the United States Constitution. (*Id.* at PageID# 7.) He seeks compensatory, punitive and nominal damages, as well as "declaratory judgments declaring [Defendants'] 'policies' described herein and their actions to be unconstitutional." (*Id.* at PageID#s 7-8.) Lastly, Bryant seeks unidentified injunctive relief and "any and all other relief deemed equitable, just, necessary, and appropriate." (*Id.*)

Service was returned executed on Defendants on October 15, 20, and 22, 2025. (Doc. Nos. 7, 8, 9, 10.) Defendants' response to Bryant's Complaint was due on November 5, 2025 but not filed. On November 13, 2025, Defendants filed a Motion requesting leave to file a Motion to Dismiss *Instanter,* citing excusable neglect in failing to meet their filing deadline. (Doc. No. 11.) The Court granted Defendants' Motion for Leave and deemed the Motion to Dismiss attached thereto (Doc. No. 11-1) filed as of November 13, 2025. *See* Non-Doc Order dated November 13, 2025.

In their Motion, Defendants first argue that Bryant's individual capacity claims should be dismissed pursuant to Fed. R. Civ. P. 12(b)(6) because Bryant fails to sufficiently allege that each of the named Defendants are personally responsible for the allegedly unconstitutional conduct that injured him. (Doc. No. 11-1 at PageID#s 86-88.) Defendants next argue that all of Bryant's claims

are subject to dismissal because they are barred by the applicable two (2) year statute of limitations for § 1983 actions. (*Id.* at PageID#s 88-89.) Defendants then maintain that Bryant's request for declaratory relief fails because it "lacks the required amount [of] specificity to state a claim." (*Id*. at PageID#s 89-90.) Defendants next assert that Ohio has not waived its sovereign immunity and, therefore, Bryant's official capacity claims are barred by the Eleventh Amendment. (*Id*. at PageID#s 90-91.) Lastly, Defendants argue that they are entitled to qualified immunity with respect to Bryant's individual capacity § 1983 claims. (*Id*. at PageID#s 91-93.)

After receiving an extension of time, Bryant filed a *pro se* Brief in Opposition on February 27, 2026. (Doc. No. 14.) Defendants filed a Reply Brief in support of their Motion to Dismiss on March 13, 2026. (Doc. No. 15.)

## III. Standards of Review

### A. Fed. R. Civ. P. 12(b)(1)[2]

The standard of review of a 12(b)(1) motion to dismiss for lack of subject matter jurisdiction depends on whether the defendant makes a facial or factual challenge to subject matter jurisdiction. *W6 Restaurant Group, Ltd v. Loeffler,* 140 F.4th 344, 349 (6th Cir. 2025). A facial attack "questions merely the sufficiency of the pleading" and requires the district court to "take[] the allegations in the complaint as true." *Gentek Bldg. Prods., Inc. v. Sherwin-Williams Co.*, 491 F.3d 320, 330 (6th Cir. 2007). To survive a facial attack, the complaint must contain a short and plain statement of the

[2] Although Defendants do not expressly cite or apply Rule 12(b)(1) in their Motion, their request to dismiss Bryant's official capacity claims on the basis of sovereign immunity under the Eleventh Amendment implicates this Court's subject matter jurisdiction. *See, e.g., White's Landing Fisheries, Inc. v. Ohio Department of Natural Resources*, 174 F.4th 493, 499 (6th Cir. 2026) (determining that sovereign immunity is a jurisdictional issue); *Russell v. Lundergan-Grimes*, 784 F.3d 1037, 1046 (6th Cir. 2015) (determining that "the Eleventh Amendment is a true jurisdictional bar"); *Doe v. DeWine*, 910 F.3d 842, 848 (6th Cir. 2018) (same). Therefore, this Court evaluates Defendants' arguments that Bryant's official capacity claims are barred by the Eleventh Amendment under Fed. R. Civ. P. 12(b)(1). *See White's Landing Fisheries*, Inc., 174 F.4th at 499; *Gies v. Flack*, 495 F.Supp.2d 854, 860 (S.D. Ohio 2007).

grounds for jurisdiction. *See Rote v. Zel Custom Mfg. LLC*, 816 F.3d 383, 387 (6th Cir. 2016); *Ogle v. Ohio Civil Serv. Emps. Ass'n, AFSCME*, Local 11, 397 F.Supp.3d 1076, 1081-82 (S.D. Ohio 2019). A factual attack, by contrast, "challenges the factual existence of subject matter jurisdiction." *Cartwright v. Garner*, 751 F.3d 752, 759 (6th Cir. 2014). When ruling on a factual attack, the court "has broad discretion with respect to what evidence to consider in deciding whether subject matter jurisdiction exists, including evidence outside of the pleadings." *Id*. at 759. The plaintiff has the burden of proving jurisdiction when subject matter jurisdiction is challenged. *Rogers v. Stratton Indus.*, 798 F.2d 913, 915 (6th Cir. 1986).

Here, the Court construes Defendants' arguments regarding immunity under the Eleventh Amendment as raising a facial attack. Defendants do not rely on any evidence outside the pleadings and instead base their immunity arguments on the content of Bryant's Complaint alone. *See, e.g., Cedar Lane Farms, Corp. v. Besancon*, 2017 WL 1155564 at *2 (N.D. Ohio Mar. 28, 2017)("Although an assertion of sovereign immunity is sometimes considered a factual attack, here the nature of the attack is more facial because the motion 'does not assert a need to examine the truthfulness of Plaintiff's allegations in order to determine the existence of subject matter jurisdiction.'") (quoting *Graber v. Metro. Life Ins. Co*., 855 F. Supp.2d 673, 676 (N.D. Ohio 2012)). Thus, the Court will analyze Defendants' argument that Bryant's official capacity claims are barred by the Eleventh Amendment as a facial attack under Rule 12(b)(1) for lack of subject matter jurisdiction.

**B. Rule 12(b)(6)**

Defendants' remaining arguments are evaluated under Fed. R. Civ. P. 12(b)(6). In order to survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain (1) 'enough facts to state

a claim to relief that is plausible,' (2) more than 'formulaic recitation of a cause of action's elements,' and (3) allegations that suggest a 'right to relief above a speculative level.'" *Tackett v. M & G Polymers, USA, LLC*, 561 F.3d 478, 488 (6th Cir. 2009) (quoting in part *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007)). For purposes of Rule 12(b)(6), "all well-pleaded material allegations of the pleadings of the opposing party must be taken as true, and the motion may be granted only if the moving party is nevertheless clearly entitled to judgment." *JPMorgan Chase Bank, N.A. v. Winget,* 510 F.3d 577, 581 (6th Cir. 2007) (internal citation and quotation marks omitted).

The measure of a Rule 12(b)(6) challenge — whether the Complaint raises a right to relief above the speculative level — "does not 'require heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face.'" *Bassett v. National Collegiate Athletic Ass'n*., 528 F.3d 426, 430 (6th Cir. 2008) (quoting in part *Twombly,* 550 U.S. at 555–56). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Deciding whether a complaint states a claim for relief that is plausible is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

Consequently, examination of a complaint for a plausible claim for relief is undertaken in conjunction with the "well-established principle that 'Federal Rule of Civil Procedure 8(a)(2) requires only a short and plain statement of the claim showing that the pleader is entitled to relief.' Specific facts are not necessary; the statement need only 'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.'" *Gunasekera v. Irwin*, 551 F.3d 461, 466 (6th Cir. 2009) (quoting in part *Erickson v. Pardus*, 551 U.S. 89 (2007)). Nonetheless, while "Rule 8 marks a notable

and generous departure from the hyper-technical, code-pleading regime of a prior era ... it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Iqbal*, 556 U.S. at 679.

## IV. Analysis

### A. Sovereign Immunity and the Eleventh Amendment

The Court will first address the issue of sovereign immunity. *See, e.g., White's Landing Fisheries, Inc.*, 174 F.4th at 499 (noting that, as a jurisdictional issue, sovereign immunity "must be decided before the merits"). *See also Russell*, 784 F.3d at 1046 (same).

In their Motion, Defendants assert that "to the extent suit is brought against Defendants in their official capacit[ies], such claims are barred by the Eleventh Amendment." (Doc. No. 11-1 at PageID# 90-91.) Defendants argue that, when a State has not waived its immunity, the Eleventh Amendment acts as a jurisdictional bar to a federal court lawsuit against a State. (*Id.*) Defendants maintain that "Ohio has not waived its sovereign immunity, and Congress did not disturb states' Eleventh Amendment immunity when it passed 42 U.S.C. § 1983." (*Id.*) Because claims against State officials in their official capacities are deemed claims against the State itself, Defendants argue that Plaintiff's official capacity claims are barred by Eleventh Amendment immunity. (*Id.*) Lastly, Defendants argue that "Plaintiff's Complaint does not fall within the *Ex Parte Young* exception as his Complaint does not allege an ongoing violation of federal law, but instead focuses on how he was allegedly wronged in the past by Defendants." (*Id.*) In his Brief in Opposition, Bryant does not meaningfully address this argument, stating only that "this defense fails." (Doc. No. 14 at PageID#s 111-112.)

The Eleventh Amendment provides that: "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI. This Amendment "forbids a plaintiff from suing a state, a state agent, or a state instrumentality for monetary damages in federal court unless that state has consented to suit, or unless Congress has clearly and expressly abrogated the state's immunity to suit." *Kerchen v. University of Michigan*, 100 F.4th 751, 761 (6th Cir. 2024). *See also Laborers' International Union of North America, Local 860 v. Neff*, 29 F.4th 325, 330 (6th Cir. 2022) (noting that sovereign immunity protects States from litigation except in "limited circumstances" and that "that remains true for the States whether the case is filed in state or federal court, whether the plaintiff is a citizen of the defendant State or not, and whether the lawsuit's target is the State or an official acting on its behalf"); *Ladd v. Marchbanks,* 971 F.3d 574, 578 (6th Cir. 2020) (explaining that federal courts do not have jurisdiction over suits against the States by their own citizens).

Sovereign immunity also protects state officials sued in their official capacities for money damages from suit in federal court. *See White's Landing Fisheries, Inc.*, 174 F.4th at 500-501; *Boler v. Early*, 865 F.3d 391, 409-410 (6th Cir. 2017). *See also Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989) ("[A] suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office. As such it is not different from a suit against the State itself."); *McCormick v. Miami University*, 693 F.3d 654, 661 (6th Cir. 2012) ("Insofar as McCormick is suing Schilling, Messman-Moore, and Wright in their official capacities for money damages, her claim is also barred by the Eleventh Amendment.") (citing *Will,* 491 U.S. at 71); *Russell*, 784 F.3d at 1046.

It is well established, however, that there are three exceptions to Eleventh Amendment sovereign immunity: (1) when the state has waived immunity by consenting to the suit; (2) when Congress has expressly abrogated the states' sovereign immunity, and (3) when the doctrine set forth in *Ex Parte Young*, 209 U.S. 123 (1908) applies. *See White's Landing Fisheries, Inc.*, 174 F.4th at 500; *Boler*, 865 F.3d at 410. *See also Puckett v. Lexington-Fayette Urban Cty. Gov't*, 833 F.3d 590, 598 (6th Cir. 2016). Here, it is undisputed that Ohio has not waived immunity by consent to suit and that Congress did not abrogate sovereign immunity when it enacted § 1983. *See Boler,* 865 F.3d at 410 ("Section 1983 does not abrogate Eleventh Amendment immunity"); *Wolfel v. Morris*, 972 F.2d 712, 718 (6th Cir. 1992) (in § 1983 action, noting that the State of Ohio had not waived its Eleventh Amendment immunity). Thus, the only possible exception to Eleventh Amendment immunity would be under *Ex Parte Young*.

"In order to fall within the *Ex Parte Young* exception, a claim must seek prospective relief to end a continuing violation of federal law." *Diaz v. Mich. Dep't of Corr.,* 703 F.3d 956, 964 (6th Cir. 2013). *See also White's Landing Fisheries, Inc.*, 174 F.4th at 500; *Russell,* 784 F.3d at 1047. As the Sixth Circuit explained: "The *Ex parte Young* doctrine applies when the lawsuit involves an action against state officials, not against the state itself. Under the doctrine, 'a federal court can issue prospective injunctive and declaratory relief compelling a state official to comply with federal law, regardless of whether compliance might have an ancillary effect on the state treasury.' 'It is beyond dispute that federal courts have jurisdiction over suits to enjoin state officials from interfering with federal rights.' However, the *Ex parte Young* doctrine 'does not ... extend to any retroactive relief.'" *Puckett*, 833 F.3d at 598 (internal citations omitted). *See also White's Landing Fisheries, Inc.*, 174

F.4th at 500 (explaining that, under the *Ex Parte Young* exception, "a litigant may seek prospective injunctive relief against a state official who is engaged in a continuing violation of federal law").

Here, it is not clear from the Complaint whether Bryant is suing Defendants Chambers-Smith, Blankenship, Lambert, and Akers in their official capacities, individual capacities, or both. (Doc. No. 1.) And Bryant fails to directly address or discuss this issue in his Brief in Opposition, arguing only that Defendants' assertion that "all claims should be dismissed as being 'official capacity' claims" is without merit. (Doc. No. 14 at PageID# 106.) Given Bryant's *pro se* status, however, the Court will liberally construe the Complaint as stating claims against Defendants in both their official and individual capacities. *See, e.g., Cook v. Walters*, 2022 WL 899528 at * 3 (N.D. Ohio March 28, 2022) (liberally construing *pro se* plaintiff's complaint as asserting both official and individual capacity claims); *Dallas v. Unknown Party #1, et al.*, 2026 WL 2224683 at * 3 (W.D. Mich. Aug. 3, 2026) ("In deference to Plaintiff's *pro se* status, the Court construes Plaintiff's complaint to sue Defendants Unknown Parties #1–5 in their official and individual capacities.").

As noted above, Bryant seeks both compensatory and punitive damages in connection with his § 1983 claims. (Doc. No. 1 at PageID# 7.) Based on the authority cited *supra*, the Court finds that, to the extent Bryant's constitutional claims seek monetary relief from Defendants in their official capacities, such claims are barred under the Eleventh Amendment. *See, e.g., Grinter v. Knight,* 532 F.3d 567, 572 (6th Cir. 2008); *Smith v. DeWine,* 476 F.Supp.3d 635, 642 (S.D. Ohio 2020); *Donlow v. Rodgers*, 2026 WL 850742 at * 5 (N.D. Ohio March 27, 2026); *Conte v. White,* 2022 WL 17850705 at * 4 (N.D. Ohio Dec. 22, 2022). Bryant's official capacity claims for monetary damages are, therefore, dismissed without prejudice. *See White's Landing Fisheries, Inc.,* 174 F.4th at 502 (noting

that dismissal for lack of subject matter jurisdiction on the basis of sovereign immunity should be without prejudice).

Bryant also, however, seeks declaratory and injunctive relief. (Doc. No. 1 at PageID# 8.) Therefore, the Court must consider whether the exception set forth in *Ex Parte Young* applies. As noted above, "[i]n order to fall within the *Ex parte Young* exception, a claim must seek prospective relief to end a continuing violation of federal law." *Diaz*, 703 F.3d at 964. *See also Boler,* 865 F.3d at 412 ("To determine if *Ex Parte Young* applies, we 'need only conduct a 'straightforward inquiry into whether [the] complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective.'") (quoting *Dubuc v. Mich. Bd. of Law Exam'rs*, 342 F.3d 610, 616 (6th Cir. 2003)). "Retroactive relief is barred by the Eleventh Amendment." *Diaz,* 703 F.3d at 964.

In his Complaint, Bryant alleges that "it is Defendants[‘] proven well established 'policy' to retaliate [against] inmates and severely punish them for filing" grievances, and to "permit guards to retaliate and approve it including use of violence and assaults and more." (Doc. No. 1 at PageID# 7.) Bryant further alleges that it is Defendants' "well established" and "routine" 'policy' to (1) "permit and condone felony assaults (including stabbings) by inmates (and [Mansfield Correctional] guards and staff);" and (2) "destroy, conceal, [and] erase evidence, videos and records of assaults and felony crimes and falsify reports of them and mislabel assaults as 'fights.'" (*Id.*) In his Prayer for Relief, Bryant seeks "declaratory judgments declaring [Defendants'] 'policies' described herein and their actions to be unconstitutional." (*Id.* at PageID# 8.) Based on the above, and construing the *pro se* Complaint liberally, the Court finds that Bryant adequately alleges ongoing violations of federal law and seeks declaratory relief that is arguably prospective in nature, i.e., relief that is designed to end

Defendants' alleged policies of violating inmates' constitutional rights under the First and Eighth Amendments.

The Court finds that Bryant has not, however, adequately alleged prospective injunctive relief. While Bryant alleges summarily that he seeks injunctive relief, he fails to provide any indication as to what injunctive relief he seeks. Thus, even when construed liberally, Bryant's allegations are insufficient to show that the *Ex Parte Young* exception applies to his claims for injunctive relief against Defendants in their official capacities. *See, e.g., Boler*, 865 F.3d at 412 ("Even if we were to find that the Complaint alleges an ongoing violation of federal law, it is not clear what injunctive relief is sought. Though each count alleged requests injunctive relief, and the prayer for relief asks for '[a]ny other relief, including injunctive relief, as [the c]ourt deems fair,' the Plaintiffs provide no indication as to what this injunctive relief might be. Under our plain reading of the Complaint, the Boler Plaintiffs have not shown that the *Ex Parte Young* doctrine applies to their claims against Governor Snyder.")

Accordingly, for all the reasons set forth above, Defendants' Motion is granted with respect to Bryant's official capacity claims for monetary damages and injunctive relief and such claims are hereby denied without prejudice. However, Defendants' Motion is denied with respect to Bryant's official capacity claims for prospective declaratory relief.

**B. Statute of Limitations**

Defendants next argue that Bryant's claims are barred by the two (2) year statute of limitations for § 1983 claims. (Doc. No. 11-1 at PageID#s 88-89.) Defendants assert that "[b]ased on Plaintiff's own admissions, the factual allegations regarding his claims for failure to protect and retaliation

occurred on July 13, 202[3][3], when he was allegedly assaulted in the chow hall" but "the face of the complaint undoubtedly shows" that Bryant did not file this action until over two years later, on July 25, 2025. (*Id.*) Defendants maintain that "Plaintiff's delay in filing his complaint within Ohio's two-year statute of limitations is [] fatal to this current action." (*Id.*)

In response, Bryant argues that the instant action is timely under the so-called "prison mailbox rule" because he "mailed in his lawsuit to this Court on July 13, 2025, [which is] dead on within the 2 years statute of limitations." (Doc. No. 14 at PageID# 109.) Bryant attaches several documents to his Brief in Opposition in support of this argument, including (1) an Affidavit in which he avers that he placed his Complaint in the prison mail box on July 13, 2025;[4] (2) a "Personal A/C Withdrawal Check out Slip" that purports to show that he presented his Complaint to prison officials for mailing on July 13, 2025[5]; and (3) documents from lawsuits involving other inmates which purport to show that Mansfield Correctional officials delay, withhold, and tamper with legal mail. (Doc. Nos. 14-1 through 14-10.)

Relying on the above documents, Bryant argues that he has "no control over the [Mansfield Correctional] prison mailroom nor the guards and officials thereof" and "has no control of their

---

[3] The Court notes that, in their Motion, Defendants incorrectly state that Bryant's alleged assault occurred on July 13, 2025. (Doc. No. 11-1 at PageID# 89.) The Court construes this as a typographical error.

[4] In his Affidavit, Bryant avers (in relevant part) as follows: "On the morning of July 13, 2025, I mailed in my aforesaid lawsuit in Case # 25 CV1551 to this Cleveland Ohio Federal Court. It was overweight mail and it required a mandatory signed verified mail out mail receipt form attached to the large brown envelope, and it required a ranking administrator to sign it. This was all done on July 13, 2025 and I put my lawsuit mailing in the [Mansfield Correctional] prison mailbox on July 13, 2025." (Doc. No. 14-1 at PageID# 113.)

[5] This form appears to reflect postage costs for a package sent to this Court by Bryant. (Doc. No. 14-2 at PageID# 115.) Although not entirely clear, it appears that the date 7/13/25 is handwritten in the top right corner of the document. (*Id.*) The signatures on the form are illegible but, according to Bryant, the form is signed by him and an unidentified prison administrator. (*Id.*) The form is time stamped July 18. (*Id.*)

delaying, withholding, censoring, stealing, tampering with incoming and outgoing mail to federal courts and lawyers." (*Id*. at PageID# 109.) Bryant further asserts that "the issue of [his] filing and mailing in his lawsuit, how it was processed (and when) and the statute of limitations" are "solely and totally 'evidentiary issues' that go beyond the limits and constraints of a Rule 12(b)(6) pleading." (*Id*.) Bryant maintains that "the law requires that these 'evidentiary' type issues can only be addressed and decided in summary judgment under Civil Rule 56 after discovery is completed." (*Id*.)

In their Reply Brief, Defendants argue that the "Personal A/C Withdrawal Check out Slip" attached to Bryant's Brief in Opposition actually shows that it was time stamped by the mailroom on July 18, 2025 and processed on July 21, 2025. (Doc. No. 15 at PageID# 137.) Defendants maintain that this evidence shows that Bryant did not place the Complaint in the prison mailbox on July 13, 2025 and that his claims are untimely. (*Id*.) Defendants concede, however, that "without evidence external to the pleadings, Plaintiff may have filed his Complaint timely." (*Id*.)

As an initial matter, the Court declines to consider the Affidavit, "Personal A/C Withdrawal Check out Slip," and other documents attached as Exhibits to Bryant's Brief in Opposition. "The federal rules require that if, in a 12(b)(6) motion to dismiss, 'matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56. All parties must be given a reasonable opportunity to present all the material that is pertinent to the motion.'" *Wysocki v. Int'l Bus. Mach. Corp.*, 607 F.3d 1102, 1104-05 (6th Cir. 2010) (quoting Fed. R. Civ. P. 12(d)). "Faced with matters outside the pleadings, district courts have 'complete discretion' to accept them (and treat the motion as one for summary judgment) or ignore them (and treat the motion as one to dismiss)." *Caraway v. CoreCivic of Tenn., LLC,* 98 F.4th 679, 688 (6th Cir. 2024) (quoting 5C Wright & Miller's Federal Practice & Procedure § 1366 (3d ed.

2024)). The Sixth Circuit has cautioned that conversion of Rule 12(b)(6) motions into summary judgment motions "should be exercised with great caution and attention to the parties' procedural rights." *Tackett,* 561 F.3d at 487.

Here, the Exhibits attached to Bryant's Brief in Opposition are "matters outside the pleadings" for purposes of Rule 12(d) because they are not "exhibits attached to the complaint, public records, items appearing in the record of the case, [or] exhibits attached to defendant's motion to dismiss." *Qui v. Board of Education of Oldham County,* 2024 WL 5423285 at * 1 (6th Cir. Oct. 11, 2024) (finding that exhibits attached to plaintiff's response to defendant's motion to dismiss were "matters outside the pleadings"). *See also Bates v. Green Farms Condominium Association,* 958 F.3d 470, 483 (6th Cir. 2020) ("Yet it is black-letter law that, with a few irrelevant exceptions, a court evaluating [] a motion to dismiss [] must focus only on the allegations in the pleadings. *** 'The court may not ... take into account additional facts asserted in a memorandum opposing the motion to dismiss, because such memoranda do not constitute pleadings under Rule 7(a).') (quoting 2 James Wm. Moore et al., Moore's Federal Practice § 12.34[2], database updated 2020) (internal citations omitted).

In the exercise of its discretion, the Court declines to consider the Exhibits attached to Bryant's Brief in Opposition in resolving Defendants' Motion to Dismiss Bryant's claims as untimely under Rule 12(b)(6). As discussed below, limiting its consideration solely to the allegations in Bryant's Complaint, the Court finds (and Defendants essentially concede) that Bryant's Complaint is timely filed under the prison mailbox rule.

In *Houston v. Lack,* 487 U.S. 266 (1988), the Supreme Court held that notices of appeal from *pro se* prisoners are considered filed when the prisoner delivers the notice to prison authorities for mailing. This is now known as the prison mailbox rule. *See Cretacci v. Call*, 988 F.3d 860, 866 (6th

Cir. 2021). "In adopting the rule, the Court emphasized the unique challenges faced by *pro se* prisoners seeking to appeal: they cannot travel to the courthouse to file the notice, they cannot place the filing 'directly into the hands of the United States Postal Service and track its progress, nor 'do they have lawyers who can take these precautions for them.'" *Id*. (quoting *Houston*, 486 U.S. at 271.) Because *pro se* prisoners are "[u]nskilled in law, unaided by counsel, and unable to leave the prison," they have "no choice but to entrust the forwarding of [their] notice of appeal to prison authorities whom [they] cannot control nor supervise and who may have every incentive to delay." *Houston*, 486 U.S. at 271.

The Sixth Circuit has extended the prison mailbox rule from *Houston* to civil complaints filed by *pro se* prisoners. *Richard v. Ray*, 290 F.3d 810, 813 (6th Cir. 2002). *See also Aldridge v. Gill*, 24 Fed. Appx 428, 429 (6th Cir. 2001) ("The 'mailbox rule' of *Houston v. Lack* applies to the filing of § 1983 suits under the applicable, state statute of limitations.") Thus, "a *pro se* prisoner's complaint is deemed filed when it is handed over to prison officials for mailing to the court." *Brand v. Motley*, 526 F.3d 921, 925 (6th. Cir. 2008). *See also Scott v. Evans,* 116 Fed. Appx 699, 701 (6th Cir. 2004). Absent evidence to the contrary, the signing date on a *pro se* prisoner's pleading constitutes the date the *pro se* prisoner delivered the pleading to prison authorities for mailing to the court. *See Brand*, 526 F.3d at 925.

In light of the above, Defendants improperly rely on the date the court clerk docketed Bryant's Complaint (i.e., July 25, 2025) in arguing that Bryant's § 1983 claims are time-barred. Rather, under the mailbox rule, Bryant's Complaint is deemed filed on the date when it was handed over to prison officials for mailing, which is presumed to be the date that Bryant signed the Complaint. *See Brand*, 526 F.3d at 925. Here, Bryant signed the Complaint on July 13, 2025. (Doc. No. 1 at PageID# 8.)

Thus, and for purposes of the instant Motion only, the Court deems the Complaint filed on July 13, 2025. As the parties do not dispute that the two-year statute of limitations[6] for Bryant's § 1983 claims began to run on the date of his assault (i.e., on July 13, 2023), the Court rejects Defendants' argument that Bryant's § 1983 claims should be dismissed as time-barred at this stage of the proceedings.

**C. Individual Capacity Claims**

In his Complaint, Bryant asserts the following two claims against Defendants Chambers-Smith, Blankenship, Lambert and Akers under 42 U.S.C. § 1983:

> 21. All of Defendants' actions, inactions, corruption, intentional indifferences violated Plaintiff's established rights defined in the Eighth Amendment of the U.S. Constitution and controlling authorities of law.
>
> 22. All of Defendants' actions, inactions, corruption, intentional indifferences as stated herein violated Plaintiff's established rights defined by the First Amendment of the U.S. Constitution and controlling authorities of law.

(Doc. No. 1 at PageID# 7.) Although not entirely clear, the Court interprets the above as asserting § 1983 claims against Defendants in their individual capacities for (1) failure to protect in violation of the Eighth Amendment; and (2) retaliation in violation of the First Amendment.

---

[6] In *Browning v. Pendleton*, 869 F.2d 989 (6th Cir. 1989), the Sixth Circuit held that the "limitations period for § 1983 actions arising in Ohio is the two-year period in Ohio Revised Code ("O.R.C.") § 2305.10." *Id*. Since *Browning*, it is well-settled that, in Ohio, O.R.C. § 2305.10 is the appropriate statute of limitations in § 1983 cases. *See LRL Props. v. Portage Metro Hous. Auth*., 55 F.3d 1097, 1105 (6th Cir. 1995); *see also Williams v. Schismenos*, 258 F.Supp.3d 842, 853 (N.D. Ohio 2017) ("In Ohio, the statute of limitations for § 1983 actions is contained in Ohio Rev. Code § 2305.10, which requires that actions for bodily injury be filed within two years after their accrual.") The question of when the statute of limitations begins to run is governed by federal law. *Ruff v. Runyon*, 258 F.3d 498, 500 (6th Cir. 2001). "The 'standard rule' is that a cause of action accrues 'when the plaintiff has a complete and present cause of action, that is, when the plaintiff can file suit and obtain relief.'" *D'Ambrosio v. Marino*, 747 F.3d 378, 384 (6th Cir. 2014) (quoting *Wallace v. Kato,* 549 U.S. 384, 388 (2007)). "Stated differently, 'in determining when the cause of action accrues in § 1983 cases, we look to the event that should have alerted the typical lay person to protect his or her rights.'" *Cooey v. Strickland*, 479 F.3d 412, 416 (6th Cir. 2007) (quoting *Trzebuckowski v. City of Cleveland,* 319 F.3d 853, 856 (6th Cir. 2003)).

Defendants argue that Bryant's individual capacity § 1983 claims should be dismissed because (1) Bryant fails to adequately allege that each Defendant was personally involved in the deprivation of his constitutional rights; and (2) Defendants are entitled to qualified immunity. (Doc. No. 11-1.) The Court will address each of these arguments in turn.

**1. Personal Involvement**

Defendants first maintain that Bryant's § 1983 claims should be dismissed because, aside from alleging that his grievances were "denied and rejected by Blankenship and Lambert," Bryant has not alleged any other personal involvement by either of these Defendants. (Doc. No. 11-1 at PageID#s 87-88.) Regarding Defendant Akers, Defendants assert that "Plaintiff only accuses Akers of transporting the two alleged assailants back to their cells, which is consistent with his duties as a correctional officer and not a constitutional violation." (*Id.*) Regarding Defendant Chambers-Smith, Defendants maintain that "besides naming her in the caption of the complaint and alleg[ing] [that] a letter he wrote was ignored, Plaintiff has asserted no personal involvement" by this Defendant. (*Id.*) In sum, Defendants assert that the Complaint should be dismissed as a matter of law because Bryant "has alleged no personal involvement from any Defendant in this matter." (*Id.*)

In response, Bryant argues that his "*pro se* detailed Complaint pleaded [] specific clear claims of 'failure to protect' Eighth Amendment violations." (Doc. No. 14 at PageID# 107.) Bryant maintains that "his claims are [that] defendants approved, allowed, and disregarded inmates assaulting [him] without any consequences and did not report it to no law enforcement agency." (*Id.*) Bryant further asserts that his claims "specifically stated each defendant's indifference, inaction, involvement, participation and personal violation." (*Id.*)

In their Reply Brief, Defendants maintain that Bryant waived this issue because he failed to respond to their argument that the Complaint lacks sufficient facts to establish personal involvement. (Doc. No. 15.)

To maintain a claim under § 1983, a plaintiff must establish that he was deprived of a right secured by the Constitution or the laws of the United States, and that the deprivation was caused by a person acting under color of state law. *See West v. Atkins*, 487 U.S. 42, 48 (1988); *Simescu v. Emmet Cty. Dep't of Soc. Services*, 942 F.2d 372, 374 (6th Cir. 1991). Here, there is no dispute that Defendants Chambers-Smith, Blankenship, Lambert, and Akers acted under color of state law for purposes of Bryant's Complaint. As such, the only remaining question is whether Bryant has adequately pled that Defendants deprived him of his First and Eighth Amendment rights.

In analyzing this question, however, courts must bear in mind that "[p]ersons sued in their individual capacities under § 1983 can be held liable based only on their own unconstitutional behavior." *Heyerman v. County of Calhoun,* 680 F.3d 642, 647 (6th Cir. 2012). *See also Murphy v. Grenier*, 406 Fed. Appx. 972, 974 (6th Cir. 2011) ("Personal involvement is necessary to establish section 1983 liability"). Thus, to state an individual capacity claim against a government official, "a complaint must allege that the defendants were personally involved in the alleged deprivation of federal rights." *Frazier v. Michigan*, 41 Fed. Appx. 762, 764 (6th Cir. 2002). *See also Bojicic v. DeWine*, 569 F.Supp.3d 669, 679 (N.D. Ohio 2021); *Wolfe v. Ohio Department of Corrections and Rehabilitation,* 2022 WL 1591304 at * 4 (N.D. Ohio May 19, 2022).

A plaintiff must also plead how each individual defendant caused the plaintiff's alleged constitutional harm. *See Lanman v. Hinson*, 529 F.3d 673, 684 (6th Cir. 2008) ("This Court has consistently held that damage claims against government officials arising from alleged violations of

constitutional rights must allege, with particularity, facts that demonstrate what each defendant did to violate the asserted constitutional right.") (emphasis in original); *Boddie v. City of Lima, Ohio*, 2018 WL 1847934 at *2 (N.D. Ohio April 18, 2018) ("Because vicarious liability is inapplicable to ... § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution.") Thus, courts have found that a plaintiff's categorical references to a group of defendants are insufficient to allege specific actions on the part of individual defendants for purposes of a § 1983 individual capacity claim. *See Marcilis v. Twp. of Redford*, 693 F.3d 589, 596 (6th Cir. 2012) (affirming district court's dismissal of individual capacity claims against two defendants because the complaint made "only categorical references to 'Defendants'"). *See also Bojicic*, 569 F.Supp.3d at 679; *Wolfe,* 2022 WL 1591304 at * 5.

The Court finds as follows. As an initial matter, the Court disagrees with Defendants that Bryant waived any opposition with respect to this issue. As set forth *supra*, in his Brief in Opposition, Bryant expressly disagreed with Defendants' argument that he failed to sufficiently plead each Defendant's personal involvement, asserting that his Complaint "specifically stated each defendant's indifference, inaction, involvement, participation and personal violation." (Doc. No. 14 at PageID# 107.) It is true that Bryant did not direct this Court's attention to any particular allegations in the Complaint in support of this argument. However, given Bryant's *pro se* status and the fact that he did acknowledge and attempt to address Defendants' argument with respect to this issue, the Court is not inclined to find that Bryant waived all opposition to dismissal of the instant action on the basis of his alleged failure to sufficiently plead Defendants' personal involvement in the alleged deprivation of his constitutional rights.

In evaluating this issue, the Court examines Bryant's allegations regarding each Defendant separately in the context of his failure to protect and retaliation claims. The Court begins with Bryant's Eighth Amendment claim. In *Farmer v. Brennan*, 511 U.S. 825 (1994), the Supreme Court held that the Eighth Amendment's prohibition of cruel and unusual punishments requires prison officials to (among other things) "take reasonable measures to guarantee the safety of the inmates." *Farmer,* 511 U.S. at 832. To establish an Eighth Amendment failure-to-protect claim, an inmate must show that prison officials acted with "deliberate indifference" to "a substantial risk of serious harm." *Id*. at 828. A viable claim has both an objective and a subjective prong, requiring the plaintiff to demonstrate that "(1) the alleged mistreatment was objectively serious; and (2) the defendant subjectively ignored the risk to the inmate's safety." *Bishop v. Hackel,* 636 F.3d 757, 766 (6th Cir. 2011) (citing *Farmer,* 511 U.S. at 833). *See also Zakora v. Chrisman*, 44 F.4th 452, 468 (6th Cir. 2022).

Regarding the objective prong, the Sixth Circuit has explained that a prison inmate must show that the failure to protect from risk of harm is objectively "sufficiently serious." *Bishop*, 636 F.3d at 766. The risk to inmate health or safety must be "excessive." *Farmer,* 511 U.S. at 837. Thus, the objective prong "requires a court to assess whether society considers the risk that the prisoner complains of to be so grave that it violates contemporary standards of decency to expose anyone unwillingly to such a risk." *Helling v. McKinney*, 509 U.S. 25, 36 (1993). *See also Zakora,* 44 F.4th at 469. "Even where a serious injury occurs, the objective prong of a failure-to-protect claim requires an analysis of the risk to the injured party before the alleged injury occurred." *Zakora,* 44 F.4th at 469-470. "This analysis must consider the likelihood of harm to the injured party in the context of the circumstances that led to the injury." *Id.*

Regarding the subjective prong, the Sixth Circuit has noted that “the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.” *Id.* at 472. “Such awareness can be demonstrated through ‘inference from circumstantial evidence, ... and a factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious.’” *Id*. (quoting *Farmer,* 511 U.S. at 842.) “Because each official's liability must be based solely on that official's own knowledge and actions, we consider the subjective prong for each defendant separately.” *Id*.

Here, Bryant alleges that, prior to his assault in July 2023, he “filed numerous grievances against a corrupt 4A female guard who was harassing him and making threats to arrange to have inmates assault him.” (Doc. No. 1 at PageID# 5.) Bryant alleges that “Defendants Blankenship and Lambert denied all of the grievances and appeals” and “threatened to ban him from being allowed to file any more grievances.” (*Id*.) Bryant further alleges that “during June into July 2023, [he] wrote and sent several complaints/letters to [Defendant] Chambers-Smith ... regarding the aforesaid retaliation threats and violence threats to arrange to have him assaulted” but that she “intentionally ignored and disregarded all of [his] letters and complaints." (*Id*. at PageID# 5-6.) Bryant alleges that he was then assaulted on July 13, 2023 “without notice [or] provocation” by an “unknown” inmate. (*Id*. at PageID# 6.)

Bryant alleges that, on the date of the assault, “Defendant Lt. Akers was the shift supervisor in charge and on the scene.” (*Id*.) He alleges that “[o]n orders by Akers both attackers were not taken to T.P.U. segregation (known as ‘The Hole’)” and “[o]n orders by Akers no conduct tickets were issued on the assailants and they simply returned to their cells in [the] 4A unit without any imposed punishment.” (*Id*.) Bryant further alleges that “pursuant to ‘policy’ and orders by Akers,

Blankenship, Lambert and Chambers-Smith no criminal assault report was ever made to any law enforcement agency." (*Id.*) Lastly, Bryant alleges that Defendants ordered all video evidence "destroyed and erased" and all "records and reports" about the assault "falsified and the majority erased." (*Id.*)

Based on the above, the Court finds that Bryant has sufficiently alleged that Defendants Chambers-Smith, Blankenship, and Lambert were personally involved in the alleged deprivation of his Eighth Amendment rights. As noted *supra,* to survive dismissal of this claim, Bryant must plead that each Defendant acted with "deliberate indifference" to "a substantial risk of serious harm." *Farmer*, 511 U.S. at 828. Bryant alleges that, prior to his assault on July 13, 2023, he expressly notified each of these Defendants (through various grievances, "appeals," and/or "complaints/letters") that an allegedly corrupt corrections officer in his housing unit was "making threats to arrange to have inmates assault him." (Doc. No. 1 at PageID#s 5-6.) Bryant alleges that, despite being aware of this threat to his personal safety, (1) Defendant Chambers-Smith "intentionally ignored and disregarded" his letters and complaints regarding these "retaliation threats and violence threats;" and (2) Defendants Blankenship and Lambert denied his grievances and appeals, thereby failing to take action to protect him. (*Id.*) Bryant alleges that he was thereafter assaulted without provocation by an unknown inmate, as a result of which he suffered "numerous injuries to his head and face and likely concussions due to loss of balance, distorted vision and severe long term headaches" for which he has received no medical treatment. (*Id.* at PageID# 6.)

Giving the *pro se* Complaint a liberal construction, the Court finds that these allegations are sufficient to plead Defendants Chambers-Smith, Blankenship, and Lambert's personal involvement with respect to Bryant's failure to protect claim. Specifically, and taking the above allegations in the

Complaint as true (as this Court must at this stage of the proceedings), the Court finds that Bryant has sufficiently alleged that (1) the alleged mistreatment (i.e., a threat from a corrections officer that she was going to have him physically assaulted by another inmate) was objectively serious; and (2) Defendants Chambers-Smith, Blankenship, and Lambert were each aware of the alleged threat and nonetheless subjectively ignored the risk to Bryant's safety. *See Bishop,* 636 F.3d at 766.

The Court finds, however, that Bryant has not sufficiently alleged Defendant Akers's personal involvement for purposes of this claim. Even giving the *pro se* Complaint a liberal construction, Bryant does not allege that, prior to the July 13, 2023 assault, Defendant Akers was subjectively aware of the female corrections officer's alleged threat to "arrange to have inmates assault" Bryant. And while Bryant does allege that, after the assault, Defendant Akers ordered that Bryant's attackers not be taken to "the Hole" and ordered that no conduct tickets be issued to the attackers, Bryant fails to allege that Akers's alleged orders placed him at a further risk of substantial harm. That is, Bryant does not allege (or argue) that, because Akers failed to ensure that Bryant's attackers were disciplined, Bryant was later harmed by those attackers or otherwise subjected to further risk of physical harm. Accordingly, the Court finds that Bryant has failed to sufficiently allege Defendant Akers's personal involvement for purposes of his Eighth Amendment failure to protect claim.

The Court next addresses Bryant's First Amendment claim. The Sixth Circuit has held that a First Amendment retaliation claim has the following three elements: "(1) the plaintiff engaged in protected conduct; (2) an adverse action was taken against the plaintiff that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) there is a causal connection between elements one and two—that is, the adverse action was motivated at least in part by the plaintiff's protected conduct." *Thaddeus–X v. Blatter,* 175 F.3d 378, 394 (6th Cir. 1999). *See also*

*Hardrick v. Huss,* 155 F.4th 518, 525-526 (6th Cir. 2025); *Maben v. Thelen*, 887 F.3d 252, 264 (6th Cir. 2018).

While a closer call, the Court finds that Bryant has sufficiently alleged Defendants Chambers-Smith, Blankenship, and Lambert's personal involvement for purposes of his First Amendment retaliation claim. As noted above, in the Complaint, Bryant alleges that he filed numerous grievances, appeals, and "complaints/letters" that a corrections officer in his housing unit was harassing him and threatening to have an inmate assault him, all of which were either denied or ignored by Defendant Chambers-Smith, Blankenship, and Lambert. (Doc. No. 1 at PageID#s 5-6.) Bryant further alleges that he filed additional grievances and "complaint letters" about the assault itself, which were also denied or ignored by Chambers-Smith, Blankenship, and Lambert. (*Id*. at PageID#s 6-7.) Lastly, Bryant alleges that: "[i]t is Defendants['] proven well established 'policy' to retaliate on inmates and severely punish them for filing them [i.e., grievances]. It is their 'policy' to permit guards to retaliate and approve it including use of violence and assault and more." (*Id*. at PageID#s 6-7.)

Reviewing Bryant's *pro se* allegations as a whole, and giving them a liberal construction, the Court finds that Bryant has sufficiently alleged that Defendants Chambers-Smith, Blankenship, and Lambert retaliated against him for engaging in protected conduct (i.e., for filing grievances and/or "complaint letters" regarding the corrections officer's alleged threats) by denying or ignoring those grievances/"complaint letters" and allowing or permitting the July 13, 2023 assault to occur. However, the Court finds that Bryant has not sufficiently alleged Defendant Akers's personal involvement for purposes of this claim. Notably, Bryant does not allege that Defendant Akers was aware that Bryant had engaged in protected conduct, i.e., that Bryant had filed grievances and/or "complaint letters" about either the corrections officer's alleged threat or the assault itself. And in

the absence of any allegations that Defendant Akers was aware that Bryant had engaged in protected conduct, Bryant has not sufficiently alleged that any adverse action allegedly taken by Defendant Akers was motivated, at least in part, by Bryant's protected conduct.

Accordingly, and for all the reasons st forth above, the Court denies Defendants' request to dismiss Bryant's individual capacity § 1983 claims against Defendants Chambers-Smith, Blankenship, and Lambert for failure to sufficiently plead their personal involvement in the alleged deprivation of Bryant's constitutional rights. Defendants' request to dismiss Bryant's individual capacity claims against Defendant Akers is, however, granted. Defendant Akers is hereby dismissed from the instant action.

**2. Qualified Immunity**

Defendants next argue that they are entitled to qualified immunity with respect to Bryant's individual capacity § 1983 claims. (Doc. No. 11-1 at PageID#s 91-93.) Under the doctrine of qualified immunity, "courts may not award damages against a government official in his personal capacity unless 'the official violated a statutory or constitutional right,' and 'the right was "clearly established" at the time of the challenged conduct.'" *Lane v. Franks*, 573 U.S. 228, 243 (2014) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011)). In evaluating qualified immunity at the pleading stage, the Court must determine whether the complaint plausibly alleges facts showing that (1) the government official violated a plaintiff's constitutional rights, and (2) that this right was clearly established at the time of the violation. *See Siefert v. Hamilton Cnty.,* 951 F.3d 753, 762 (6th Cir. 2020); *see also Saalim v. Walmart*, 97 F.4th 995, 1003 (6th Cir. 2024); *Kerchen*, 100 F.4th at 761. "If, taking all the facts as true and reading all inferences in the plaintiff's favor, the plaintiff has not

plausibly show[n] a violation of his clearly established rights, then the [official] is entitled to immunity from suit." *Id.; see also Crawford v. Tilley*, 15 F.4th 752, 766 (6th Cir. 2021).

For a law to be "clearly established," it must be so clear at the time of the incident that every reasonable official would understand the unlawfulness of his conduct. *District of Columbia v. Wesby*, 583 U.S. 48, 63 (2018). In evaluating whether a constitutional right was clearly established for purposes of qualified immunity, courts "must examine the particular situation that [the official] confronted and ask whether the law clearly established that [his] conduct was unlawful." *Howse v. Hodous*, 953 F.3d 402, 407 (6th Cir. 2020). In reading a complaint in the light most favorable to the plaintiff, it need only be "plausible" that an official's acts violated the plaintiff's clearly established constitutional right. *Courtright v. City of Battle Creek*, 839 F.3d 513, 518 (6th Cir. 2016).

Regarding the first step in the qualified immunity analysis, Defendants assert (summarily and without further explanation) that "the evidence demonstrates none of the defendants violated Plaintiff's constitutional rights." (Doc. No. 11-1 at PageID# 92.) Regarding the second step, Defendants argue that Bryant "cannot refer to any authority containing a set of facts similar to the facts of this matter to show that he had a constitutional right so clearly established in a particularized sense that the Defendants reasonably should have known their personal conduct would violate said purported constitutional right." (*Id.* at PageID#s 92-93.)

In response, Bryant argues generally that he has sufficiently pled facts showing that Defendants failed to protect him in violation of his Eighth Amendment rights. (Doc. No. 14 at PageID# 107.) In support of this argument, Bryant cites (among other authorities) the Supreme Court's decision in *Farmer v. Brennan,* 511 U.S. 825 (1994) for the proposition that "prison officials

have a duty to protect prisoners from violence suffered at the hands of other prisoners." (*Id.*) Defendants do not address the issue of qualified immunity in their Reply Brief. (Doc. No. 15.)

**a. Violation of a Constitutional Right**

Under the first step of the qualified immunity analysis, the Court must determine whether the Complaint plausibly alleges facts showing that Defendants Chambers-Smith, Blakenship, and Lambert violated Bryant's constitutional rights under the First and Eighth Amendments. Defendants devote one sentence of argument to this issue, asserting (summarily) that "the evidence demonstrates none of the defendants violated Plaintiff's constitutional rights." (Doc. No. 11-1 at PageID# 92.) Defendants fail to cite, apply, or discuss any legal authority in connection with their argument that Bryant failed to plausibly allege a violation of his constitutional rights under the First and Eighth Amendments. Indeed, nowhere in their Motion do Defendants even recite (much less apply) the elements of Bryant's failure to protect and/or retaliation claims. Moreover, Defendants appear to misconstrue the standard on a Rule 12(b)(6) Motion to Dismiss, improperly arguing that the "evidence" demonstrates that they did not violate Bryant's constitutional rights rather than focusing on the sufficiency of the allegations in Bryant's Complaint.

In sum, Defendants' argument on the first step of the qualified immunity analysis is entirely deficient. It is well established that "[i]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived." *McPherson v. Kelsey*, 125 F.3d 989, 995 (6th Cir. 1997); *Gradisher v. City of Akron,* 794 F.3d 574, 586 (6th Cir. 2015) (same). "It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to … put flesh on its bones." *McPherson*, 125 F.3d at 995. Here, the Court finds that, by failing to provide any meaningful discussion of this issue, or citation to legal authority, Defendants have waived

their argument that Bryant failed to plausibly allege that Defendants Chambers-Smith, Blankenship and Lambert violated his constitutional rights under the First and Eighth Amendments. Moreover, even if it were to consider this issue on the merits, the Court would find, for all the reasons set forth in Section IV.C.1 of this Opinion, that Bryant has plausibly alleged that Defendants Chambers-Smith, Blankenship and Lambert failed to protect him in violation of the Eighth Amendment and retaliated against him in violation of the First Amendment.

**b. Clearly Established Law**

Under the second step of the qualified immunity analysis, the Court must determine whether the Complaint plausibly alleges facts showing that Bryant's constitutional rights under the First and Eighth Amendments were clearly established at the time of the violation. As noted above, for a law to be "clearly established," it must be so clear at the time of the incident that every reasonable official would understand the unlawfulness of his conduct. *Wesby*, 583 U.S. at 63. Courts "must examine the particular situation that [the official] confronted and ask whether the law clearly established that [his] conduct was unlawful." *Howse*, 953 F.3d at 407.

In their Motion, Defendants correctly note that it is Bryant's burden to "refer to case authority that make out a violation of a constitutional right so clearly established in a particularized sense that a reasonable individual confronted with the same situation would have known that their conduct violated that right." (Doc. No. 11-1 at PageID# 92.) Defendants argue that Bryant cannot point to any such authority and, therefore, they are entitled to qualified immunity as a matter of law. (*Id*. at PageID#s 92-93.)

Although he does not specifically use the term "clearly established law" in his Brief in Opposition, Bryant argues that he has plead "specific clear claims of failure to protect Eighth

Amendment violations" and directs this Court's attention to the Supreme Court's decision in *Farmer v. Brennan*, 511 U.S. 825 (1994). (Doc. No. 14 at PageID# 107.) Defendants do not further address the issue of qualified immunity in their Reply Brief. (Doc. No. 15.)

For the following reasons, the Court finds that the Complaint plausibly alleges facts showing that Bryant's constitutional rights under the Eighth Amendment were clearly established at the time of the violation. As set forth *supra*, Bryant alleges that, prior to his assault, he notified Defendants Chambers-Smith, Blankenship, and Lambert (via his grievances and "complaint/letters") that "a corrupt 4A female guard" was "making threats to arrange to have inmates assault him." (Doc. No. 1 at PageID# 5.) Bryant alleges that (1) "Defendants Blankenship and Lambert denied all of the grievances and appeals" and "threatened to ban him from being allowed to file any more grievances;" and (2) Defendant Chambers-Smith "intentionally ignored and disregarded all of [his] letters and complaints." (*Id*. at PageID# 5-6.) Bryant alleges that he was then assaulted on July 13, 2023 "without notice [or] provocation" by an "unknown" inmate. (*Id*. at PageID# 6.) Bryant further alleges that it is Defendants' "policy" to "permit and condone felony assaults" by inmates and Mansfield Correctional guards and staff. (*Id*. at PageID# 7.)

As Bryant correctly notes, the Supreme Court has held that "prison officials have a duty ... to protect prisoners from violence at the hands of other prisoners." *Farmer,* 511 U.S. at 833. Furthermore, "on several occasions [the Sixth Circuit] ha[s] recognized an inmate's right to be free from prison violence as clearly established." *Bishop*, 636 F.3d at 766 (citing *Leary v. Livingston Cty,* 528 F.3d 438, 442 (6th Cir. 2008) (noting that the right to be free from violence at the hands of other prisoners is clearly established); *Doe v. Bowles,* 254 F.3d 617, 620 (6th Cir. 2001) ("The right of an inmate to be protected from an attack by a fellow inmate was well established at the time the events

in question took place."); and *Walker v. Norris,* 917 F.2d 1449, 1453 (6th Cir. 1990) ("On several occasions, we have held that 'deliberate indifference' of constitutional magnitude may occur when prison guards fail to protect one inmate from an attack by another...."). In light of this authority and taking Bryant's allegations as true for purposes of the instant Motion, the Court finds that Bryant has plausibly alleged that his constitutional right to be protected from an attack by a fellow inmate was clearly established at the time of the alleged constitutional violation in this case.

Regarding Bryant's retaliation claim, neither Bryant nor Defendants adequately address this claim in their briefing. In arguing that they are entitled to qualified immunity, Defendants do not distinguish between Bryant's First and Eighth Amendment claims and simply argue generally that Bryant cannot establish that his constitutional rights were clearly established at the time of the alleged violations. (Doc. No. 11-1 at PageID#s 91-93.) And while Bryant addresses his failure to protect claim in his Brief in Opposition, he does not specifically discuss or address his First Amendment retaliation claims. (Doc. No. 14.)

Given Bryant's *pro se* status, however, and the fact that Defendants failed to specifically discuss Bryant's First Amendment retaliation claim in their Motion to Dismiss, the Court declines to find that Bryant waived opposition to Defendants' argument that they are entitled to qualified immunity with respect to this claim. Rather, and for the following reasons, the Court finds that Bryant has plausibly alleged facts showing that his constitutional rights under the First Amendment were clearly established at the time of the alleged violations.

As noted above, Bryant alleges that he filed numerous grievances, appeals, and "complaints/letters" that a corrections officer in his housing unit was harassing him and threatening to have an inmate assault him, all of which were either denied or ignored by Defendant Chambers-

Smith, Blankenship, and Lambert. (Doc. No. 1 at PageID#s 5-6.) Bryant further alleges that he filed additional grievances and "complaint letters" about the assault itself, which were also denied or ignored by Defendants Chambers-Smith, Blankenship, and Lambert. (*Id*. at PageID#s 6-7.) Bryant alleges that: "[i]t is Defendants['] proven well established 'policy' to retaliate on inmates and severely punish them for filing them [i.e., grievances]. It is their 'policy' to permit guards to retaliate and approve it including use of violence and assault and more." (*Id*. at PageID#s 6-7.)

The Sixth Circuit "has repeatedly recognized that if a prison officer 'retaliated against [a prisoner] for filing grievances,' the 'alleged conduct also comprises a violation of clearly established constitutional law.'" *Maben*, 887 F.3d at 269 (quoting *Noble v. Schmitt*, 87 F.3d 157, 162 (6th Cir. 1996)). In light of this authority and taking Bryant's allegations as true for purposes of the instant Motion, the Court finds that Bryant has plausibly alleged that his constitutional right to be free from retaliation for filing grievances was clearly established at the time of the alleged constitutional violation in this case.

Accordingly, the Court denies Defendants Chambers-Smith, Blankenship, and Lambert's request for qualified immunity with respect to Bryant's § 1983 claims.

**D. Declaratory Relief claim**

Lastly, Defendants argue that Bryant's request for declaratory relief fails because it "lacks the required amount [of] specificity to state a claim." (Doc. No. 11-1 at PageID# 89-90.) Defendants maintain that "nowhere in his Complaint does [Bryant] describe the 'policies' nor the 'actions' he wishes to be declared unconstitutional." (*Id*.)

The Court finds Defendants' argument to be without merit. In the Complaint, Bryant does, in fact, describe the policies and actions that he requests be declared unconstitutional. Specifically, after describing the July 13, 2023 assault, Bryant alleges as follows:

> 15. Pursuant to 'policy' and orders by Akers, Blankenship, Lambert and Chambers-Smith[,] no criminal assault report was ever made to any law enforcement agency. They ordered all camera videos and body camera videos destroyed and erased. They ordered the records and reports falsified and the majority erased.
>
> **
>
> 18. It is Defendants['] proven well established 'policy' to retaliate on inmates and severely punish them for filing them. It is their 'policy' to permit guards to retaliate and approve it including use of violence and assaults and more.
>
> 19. It is Defendants['] proven well established 'policy' to permit and condone felony assaults (including stabbings) by inmates (and [Mansfield Correctional] guards and staff). It is their routine 'policy' to destroy, conceal, [and] erase evidence, videos and records of assault and felony crimes and falsify reports of them and mislabel assaults as 'fights.'

(Doc. No. 1 at PageID#s 6-7.) In light of the above, the Court rejects Defendants' argument that Bryant fails to describe the policies and/or actions he wishes to be declared unconstitutional. Defendants have failed to demonstrate that Bryant's requested declaratory relief is insufficiently specific to state a claim. Accordingly, the Court denies Defendants' Motion to the extent it seeks dismissal of Bryant's request for declaratory relief.[7]

**V. Conclusion**

---

[7] Defendants also argue that Bryant's request for declaratory relief should be dismissed because "Plaintiff's 42 U.S.C. § 1983 [claims] [are] barred by the statute of limitations, therefore there is no longer a case or controversy." (Doc. No. 11-1 at PageID# 90.) As discussed above, however, and for purposes of evaluating Defendants' Motion to Dismiss, the Court finds that Bryant's § 1983 claims are not time barred. Therefore, this argument is likewise without merit.

Accordingly, and for all the reasons set forth above, Defendants' Motion to Dismiss (Doc. No. 11-1) is GRANTED IN PART and DENIED IN PART, as follows. Defendants' Motion is granted with respect to (1) Bryant's official capacity § 1983 claims against Defendants for monetary damages and injunctive relief; (2) Bryant's individual capacity § 1983 claims against Defendant Akers. Bryant's official capacity claims against Defendants for monetary damages and injunctive relief are dismissed without prejudice, and his individual capacity claims against Defendant Akers are dismissed with prejudice. Defendant Akers is hereby dismissed from the instant action.

Defendants' Motion is denied with respect to (1) Bryant's official capacity § 1983 claims for prospective declaratory relief; and (2) Bryant's individual capacity § 1983 claims against Defendants Chambers-Smith, Blankenship, and Lambert for violations of his First and Eighth Amendment rights.

**IT IS SO ORDERED.**

*s/Pamela A. Barker*
PAMELA A. BARKER
U. S. DISTRICT JUDGE

Date: September 25, 2026